1  JODI LINKER
   Federal Public Defender
2  Northern District of California
   NED SMOCK
3  Assistant Federal Public Defender
   19th Floor Federal Building - Box 36106
4  450 Golden Gate Avenue
   San Francisco, CA 94102
5  Telephone:   (415) 436-7700
   Facsimile:   (415) 436-7706
6  Email:        Ned_Smock@fd.org

7

8  Counsel for Defendant CASTILLO

9

10                 IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13

14  UNITED STATES OF AMERICA,          **Case No.:  23-CR-00088 CRB**

15              Plaintiff,              **JOINT SENTENCING MEMORANDUM**

16         v.                          Date:   March 12, 2025
                                        Time:   10:00 a.m.
17  RODRIGO AREVALO CASTILLO,           Court: Hon. Charles R. Breyer

18              Defendant.

19

20

21

22

23

24

25

26

27

28

JOINT SENTENCING MEMORANDUM

1

**INTRODUCTION**

Rodrigo Arevalo Castillo ("Mr. Castillo") is scheduled to appear before the Court on March 12, 2025. The parties are jointly requesting that the matter be set for a combined change-of-plea and sentencing hearing. Mr. Castillo intends to plead guilty to the sole count of the Indictment charging illegal reentry following removal, in violation of 8 U.S.C. § 1326(a) and (b)(2). The parties respectfully request that the Court impose the parties' agreed-upon sentence of time served and 14 days of imprisonment, to be served consecutive to Mr. Castillo's state sentence, to be followed by three years of supervised release. In light of the proposed disposition, the parties request that the Court decline to order preparation of a Presentence Investigation Report, pursuant to Federal Rule of Criminal Procedure 32(c)(1)(A)(ii).

Mr. Castillo was transferred into federal custody through a writ from a lengthy sentence he is serving in California state prison. He is now serving a parole violation state sentence of indeterminate length, with annual hearings before the California Board of Parole Hearings to determine whether he will be released. The parties' proposed disposition contemplates a federal conviction for illegal reentry, after which Mr. Castillo will be returned to state prison. If and when the Board of Parole Hearings ultimately approves Mr. Castillo's release, he will be transferred back into federal custody for 14 days of imprisonment to permit U.S. Immigration and Customs Enforcement ("ICE") to take custody of him so that removal proceedings can proceed. Mr. Castillo will then be removed to Mexico.

**DISCUSSION**

**I.    The Parties' Guidelines Calculation**

The parties agree that the adjusted offense level is 15, as set forth in the plea agreement:

a.    Base Offense Level, U.S.S.G. § 2L1.2(a):                                                8

b.    Specific offense characteristics under U.S.S.G. Ch. 2

§ 2L1.2(b)(2)(A): prior conviction for a felony offense                          + 10
(other than illegal reentry) for which the sentence imposed was five years
or more

c.    Acceptance of Responsibility:                                                          - 3

JOINT SENTENCING MEMORANDUM

1

2      d.      Adjusted Offense Level:                                                      15

3      The parties also agree that Mr. Castillo's criminal history category is IV.  The advisory

4  guideline sentencing range is therefore 30-37 months.

5  **II.    A Sentence of Time Served and 14 Days Would Be Sufficient But Not Greater Than
       Necessary To Achieve The Sentencing Goals Of § 3553(a)[1]**

6      **A.      Legal standard**

7          The United States Sentencing Guidelines serve as "the starting point and the initial benchmark"

8  of any sentencing process and are to be kept in mind throughout the process.  *See United States v.*

9  *Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007).

10 The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence

11 sufficient, but not greater than necessary."  *Carty*, 520 F.3d at 991 (citation omitted).  In accomplishing

12 that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

13
                (1)     the nature and circumstances of the offense and the history and
14                      characteristics of the defendant;

15              (2)     the need for the sentence imposed to reflect the seriousness of the
                        offense, to promote respect for the law, and to provide just
16                      punishment for the offense;

17              (3)     the need for the sentence imposed to afford adequate deterrence
                        to criminal conduct; and
18
                (4)     the need to avoid unwarranted sentence disparities among
19                      defendants with similar records who have been found guilty of
                        similar conduct.
20
       **B.      Mr. Castillo's history and characteristics**
21
       Rodrigo Arevalo Castillo was born in Michoacan, Mexico.  When he was eight years old, his
22
   mother brought him and his two sisters to the United States to reunite with his father, who had
23
   preceded them across the border.  They lived first in American Canyon before settling in Napa, where
24
   Rodrigo spent his childhood attending Napa schools.  For all Rodrigo knew as a child, he was
25
   American.  He retained little, if any, connection to Mexico because he left the country so young.
26

27  _____

28  [1] The government cannot, and does not, attest to the accuracy of the facts in Section II of the joint
   sentencing memorandum related to Mr. Castillo's history and characteristics.

JOINT SENTENCING MEMORANDUM

1   Although he is able to speak Spanish, English is his primary language.

2   Unfortunately, Rodrigo witnessed – and was a victim of – regular acts of violence perpetrated

3   by his father.  His father regularly physically assaulted his mother.  He beat Rodrigo with his fists, a

4   belt, and other objects.  His mother finally called the police after a particularly severe incident and he

5   was arrested.  Rodrigo was told that his father then left the country and returned to Mexico.  This left

6   Rodrigo's mother alone to care for her three children.  Rodrigo struggled to adapt.

7   When he was 18 years old, Mr. Castillo was arrested and charged with offenses related to

8   sexual contact with a family member who was a child.  The charged conduct commenced when Mr.

9   Castillo was 16 years old, but he was charged as an adult.  He was ultimately convicted of recurring

10  sexual conduct involving a child under 14 years old in violation of California Penal Code 288.5(a),

11  and he was sentenced to 6 years in state prison.

12  On or about January 20, 2017, in the Superior Court of California, County of Napa, Mr.

13  Castillo received a sentence of one hundred and sixty-eight days in county jail for driving a vehicle

14  while having 0.08 percent or more, by weight, of alcohol, in his blood, in violation of California

15  Vehicle Code § 23152(b).

16  Mr. Castillo's conviction under Penal Code § 288.5(a) subjected him to deportation and he was

17  ordered removed from the United States on or about November 13, 2020.  Mr. Castillo returned to

18  Michoacan because he had some extended family that remained there.  Unfortunately, the area was

19  very dangerous.  Mr. Castillo was a target, largely because it was known that he had family in the

20  United States.  He was kidnapped three separate times for ransom.  During these incidents he was

21  beaten and held for days at a time until his mother sent money to secure his release.  After

22  approximately 1 ½ years in Mexico, it became clear that he could not remain in Michoacan safely, so

23  Mr. Castillo chose to return to his family in Napa, California in 2022.  While back in the United

24  States, Mr. Castillo became involved with a woman and they had a son, Mateo, who just turned two

25  years old.  Mr. Castillo worked in construction and doing maintenance at a hotel.

26  In 2023, Mr. Castillo was arrested and convicted for: (i) failing to register as a sex offender

27  upon his return to the United States, in violation of California Penal Code § 290(b), and (ii)

28  revocation of parole, pursuant to California Penal Code § 3000.08.  He was sentenced in Napa

JOINT SENTENCING MEMORANDUM

1   County to 32 months in state prison.  After he finished serving the sentence, Mr. Castillo remained in

2   state prison as a parole violator.  He was transferred into federal custody over four months ago on this

3   federal illegal reentry charge and has been at Santa Rita Jail awaiting resolution of this case.  Upon

4   completion of his sentence in this case, he will be returned to state prison.

5        **C.     The nature and circumstances of the offense**

6        As agreed-upon in the plea agreement, on or about November 14, 2020, Mr. Castillo was

7   removed from the United States after knowingly and voluntarily waiving and exercising the

8   procedural and/or statutory rights that he had or may have had to contest or delay that removal.  At

9   some point thereafter, Mr. Castillo knowingly and voluntarily entered the United States, after which

10  time he knew that he was in the United States, and he knowingly and voluntarily remained in the

11  United States.  On or about September 29, 2022, Mr. Castillo was found in Napa County, California,

12  without having obtained the consent of the Attorney General or the Secretary of the Department of

13  Homeland Security to reapply for admission into the United States.  At the time Mr. Castillo entered

14  the United States, he was an alien and free from official restraint.

15       As set forth above, Mr. Castillo returned to his family in Napa, California after doing his best

16  to survive in Michoacan for 1 ½ years.  After he had been kidnapped three times, he decided that he

17  had no better option than to return to Northern California.  This has been his home since he was eight

18  years old.  Mr. Castillo understands, though, that he cannot return here legally.  He has developed a

19  plan with his family to live in Baja California, Mexico in an area that they believe is safer and does

20  not have a significant cartel presence.  He will seek employment there, possibly in the hospitality

21  industry because he is a fluent English speaker.  His family will plan to visit him in Baja as

22  frequently as possible.

23       **D.     A sentence of time served and 14 days in custody to facilitate removal provides
             specific deterrence and protects the public from future crimes**

24
    The parties have devoted significant time and effort to understanding the state law governing

25  Mr. Castillo's ongoing detention in state prison after completion of his Napa County sentence.

26  Typically, a parole-period is 12 months or three years depending on the underlying felony conviction.

27  However, there is an exception under California Penal Code § 3000(b)(4)(A), which provides that a

28

JOINT SENTENCING MEMORANDUM

1    person convicted of Mr. Castillo's offense (PC § 288.5) has a parole term of 20 years, 6 months

2    unless the parole board determines it should be longer.  There would typically be a 180-day

3    maximum for parole violations.  But under California Code of Regulations 2275, a Penal Code

4    § 288.5 conviction falls outside the normal 180 day maximum.  Instead, a person convicted of a Penal

5    Code § 288.5 who has violated parole falls back under the jurisdiction of California Department of

6    Corrections and Rehabilitation and goes up for yearly parole reconsideration hearings until the board

7    determines they are suitable for release.  This means that the parole mechanisms that Mr. Castillo is

8    now subject to do not mandate a definitive release date.  Under Penal Code § 3000 and Cal. Code

9    Regs. 2275, he will go back before the Board every year until they determine he is suitable for

10   release.  In other words, there is no maximum sentence date and no basis to be assured that he will be

11   released at the time of his next parole Board hearing, which is scheduled for October of this year.

12       Mr. Castillo's defense counsel has communicated with the attorney who is representing Mr.

13   Castillo before the Board of Parole Hearings.  He reports that the Board wants to see evidence that

14   Mr. Castillo has participated in programming in prison.  Mr. Castillo cannot do so while he is being

15   held at Santa Rita on this federal case.  Mr. Castillo's incarceration on this federal immigration

16   offense is making it even harder for him to have a chance to obtain release before the Board of Parole

17   Hearings at his annual reviews.

18       The parties have jointly agreed to a Rule 11(c)(1)(C) plea agreement contemplating a sentence

19   of time served with an additional 14 days of imprisonment, to be served consecutive to any sentence

20   that Mr. Castillo is serving in state custody, including any pending and/or current parole revocations

21   related to the state sentence.  This will assure that when he is finally ordered released by the Board of

22   Parole Hearings, Mr. Castillo will be transferred into federal custody and onward into ICE custody

23   for removal proceedings.  This disposition is reasonable and sufficient to address Mr. Castillo's

24   return to this country following deportation.  Mr. Castillo has spent more than four months at Santa

25   Rita Jail after having been transported here from the state prison where he was serving his sentence.

26                                              **CONCLUSION**

27       For the aforementioned reasons, the parties respectfully request the Court sentence him to the

28   parties' joint recommendation of time served and 14 days incarceration and three years of supervised

JOINT SENTENCING MEMORANDUM

1    release with the proposed special conditions, to be served consecutive to any sentence of

2    imprisonment and/or custodial time served in connection with court case numbers 22CR002027 and

3    22CR002209 in the Superior Court of California, County of Napa, including any pending and/or

4    current parole revocations related to those two convictions.

5

6        Dated:   March 10, 2025                    Respectfully submitted,

7                                                    JODI LINKER
                                                     Federal Public Defender
8                                                    Northern District of California

9                                                              /S
                                                     _____
10                                                   NED SMOCK
                                                     Assistant Federal Public Defender
11

12       Dated:  March 10, 2025                      Respectfully Submitted,

13                                                   PATRICK D. ROBBINS
                                                     Acting United States Attorney
14
                                                     /s/ Roland Chang
15                                                   _____
                                                     ROLAND CHANG
16                                                   Assistant United States Attorney

17

18

19

20

21

22

23

24

25

26

27

28

JOINT SENTENCING MEMORANDUM